## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**RENAE HARBIN,**

        **Plaintiff,**

**vs.**                           **No. CIV 05-550 LCS/RLP**

**THE CITY OF ALBUQUERQUE,**
**and OFFICER ESTHER GARCIA,**
**in her individual and official capacity**
**as an employee of the city of Albuquerque,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment filed on January 24, 2006 (Doc. 30) and Defendants' Cross Motion and Consolidated Memorandum for Summary Judgment filed on February 13, 2006.  (Doc. 34.)  The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), and having reviewed the motions and considered the submissions of counsel, relevant authorities, and being otherwise fully advised, finds that both motions should be **GRANTED in part and DENIED in part**.

**I.**        **FACTS.**

This action arises from the conduct of Defendant Esther Garcia ("Officer Garcia") in response to a report made by a Wal-Mart loss prevention officer concerning Plaintiff's driver's license and personal check.  On December 8, 2004, Ms. Harbin attempted to pay for $208.06 worth of purchases at Wal-Mart with a personal check.  (Pl. Ex. B at 125:13-18.)  Because the check was written for more than $200, the customer service manager took Ms. Harbin's check and driver's license for identification verification.  (*See* Pl. Ex. B at 48:6-21; I at 3.)  Eldon Nieto,

a Wal-Mart loss prevention officer, noticed that Ms. Harbin's driver's license lacked the lamination and holographic images that all official New Mexico licenses are required to bear.  (*See* Pl. Ex. I.)  Mr. Nieto attempted to contact Ms. Harbin's credit union by dialing the phone number printed on the check, but the number was no longer in service.  (Pl. Ex. I at 3-4.)  Concerned that Ms. Harbin was attempting to use a fraudulent check or license, Mr. Nieto called the Albuquerque Police Department ("APD").  (*See* Def. Ex. 2 at 30:10-15; Pl. Ex. I.)   Mr. Nieto testified that while he waited for the police to arrive, Ms. Harbin was acting "in an odd way . . . ."  (Def. Ex. 2 at 32:12-21.)  Mr. Nieto, who was standing approximately 80 feet away from Plaintiff, saw her gesturing with her hands and yelling at store personnel.  (*Id.* at 32:12-21, 33:18-19.)

        According to Officer Garcia's deposition, she responded to a call from the APD dispatcher regarding a female who "was attempting to pass a bad check" at Wal-Mart; this led Officer Garcia to believe she was responding to a felony in progress.  (*See* Pl. Ex. J at 19:6-12, 20:2, 23:1-8.)  Upon arriving at Wal-Mart, Officer Garcia proceeded to the customer service area where Plaintiff was standing.  (*Id.* at 21:18-22.)  The dispatcher had given Officer Garcia a good description of where Plaintiff was located in the store and what Plaintiff was wearing.[1]  (*See id.* at 20:2-8; Def. Ex. 1 at 1 ¶ 5; Pl. Ex. L.)  When Officer Garcia identified Ms. Harbin from the dispatcher's description, she approached Ms. Harbin from behind and immediately placed her into handcuffs without first speaking to Plaintiff or any store personnel.[2]  (Pl. Ex. J at 21:24-25, 22:1-7, 15-25; *see also* Def. Ex. 2 at 33:20-24.)  After Officer Garcia handcuffed Ms. Harbin, she

---

        [1] Plaintiff was wearing a unique zebra print hat and red pants.  (Def. Ex. 1 at 1 ¶ 5; Pl. Ex. L.)

        [2] Officer Garcia said she is "sure [she] said something to [Ms. Harbin]" while putting the handcuffs on, but she did not know what was said.  (Pl. Ex. J at 23:9-16.)  Regardless of what was said while she was handcuffing Plaintiff, Officer Garcia did not conduct any meaningful investigation beforehand.  (*Id.* at 22:19-25; *see also* Pl. Ex. O.)

separated Ms. Harbin's feet and conducted a pat-down search.  (Pl. Ex. J at 22:5-11.)  While she

was being handcuffed, Ms. Harbin appeared to be "frustrated"; Mr. Nieto testified that Ms.

Harbin yelled "a little bit[,]" asking what was going on and what she had done.  (Def. Ex. 2 at

37:2-5; Pl. Ex. J at 23:17-23.)  At this time another police officer, Officer Landavazo, arrived and

accompanied Ms. Harbin and Officer Garcia to the loss prevention security room.  (Pl. Ex. J at

22:12-13; 24:15-25.)

Plaintiff sat handcuffed in the security room while Officer Garcia began to conduct her

investigation.  (*Id.* at 25:3-7; 26:9-13.)  After an initial examination of Plaintiff's check and

license, Officer Garcia was unable to verify whether either were valid.  (*Id.* at 26:9-25.)  Officer

Garcia testified that she then read Ms. Harbin her Miranda rights and told Ms. Harbin she was

under arrest for a felony.  (*Id.* at 27:1-15.)  During the course of the investigation, Officer Garcia

called the dispatcher to run a National Crime Information Center ("NCIC") search on Plaintiff's

driver's license, called the invalid phone number imprinted on Plaintiff's check, asked Plaintiff

questions about where she obtained the check and driver's license, and searched Plaintiff's purse

and wallet with Plaintiff's cooperation.  (Def. Ex. 4 at 2; Pl. Ex. J at 27:1-5, 28:1-20, 43:20-25,

44:1-24.)  Officer Garcia testified that Plaintiff was verbally "loud and boisterous" throughout the

investigation but was not physically aggressive.[3]  (Pl. Ex. J at 35:14-24.)  Plaintiff never attempted

to flee.  (*See id.*; *see also* Pl. Ex. H at 57:3-5.)  The investigation was ultimately fruitless; the

police officers never verified whether the check or driver's license were valid.  (Pl. Ex. J at 28:21-

---

[3] Plaintiff disputes the assertion that she was in any way aggressive or boisterous.  (Doc. 38 at 7.)
Unfortunately, the page Plaintiff cites to in support of her assertion was not provided to the Court as part of Exhibit
B.  As I discuss later, the factual dispute regarding Plaintiff's behavior after she was handcuffed is not material to
my decision.

25, 29:1-6.)  Approximately forty-five minutes to one hour after Officer Garcia handcuffed

Plaintiff, the handcuffs were removed and Plaintiff was released without charges.  (*See* Def. Ex. 4

at 2, 4.)

> ## II.      PLAINTIFF'S CONSTITUTIONAL CLAIMS.

> ### A.      Summary Judgment Standard Where the Defense of Qualified Immunity Is Raised.

Both the Plaintiff and the Defendants moved for summary judgment.  The Tenth Circuit

has explained:

> It is . . . settled doctrine that the fact that both parties have moved for summary
> judgment does not permit the entry of a summary judgment if disputes remain as to
> material facts.  However, cross motions for summary judgments do authorize the
> court to assume that there is no evidence which needs to be considered other than
> that which has been filed by the parties.

*Harrison W. Corp. v. Gulf Oil Co.*, 662 F. 2d 690, 692 (10th Cir. 1981) (citations omitted),

quoted in *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 377 F. Supp. 2d 1020, 1025

(D.N.M. 2005) (quoting *Sec. & Exch. Comm'n v. Am. Commodity Exch., Inc.*, 546 F. 2d 1361,

1366 (10th Cir. 1976) ("'[F]iling of cross-motions under Rule 56, F. R. Civ. P. raises the

inference that there is no evidence other than the pleadings and supporting instruments to be

considered, and so the trial court need only examine those materials in ascertaining whether an

issue of material fact exists.'") (citation omitted)).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to

any material fact . . . ."  FED. R. CIV. P. 56(c).  "Generally, the Movant bears the initial burden of

establishing that no genuine issue exists as to any material fact."  *Martinez v. City of Las Cruces*,

Civ. No. 04-1136, Doc. 33 at 4 (D. N. M. June 20, 2005) (citing *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970)).  Summary judgment motions "involving a qualified immunity

defense[,]" however, are somewhat different.  *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.

1995) (internal quotation marks and citations omitted).  "'To reach the question of whether a

defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff

has sufficiently asserted the violation of a constitutional right at all.'"  *Id.* (quoting *Martinez v.*

*Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994) (citation omitted)).  I am required to "'first

determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional

right that was clearly established when defendant acted.'"  *Id.* (quoting *Bisbee v. Bey*, 39 F.3d

1096, 1100 (10th Cir. 1994) (citation omitted)).  "'Whether an asserted federal right was clearly

established at a particular time . . . presents a question of law'" properly decided by the Court.  *Id.*

(quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (citation omitted)).  "'Decision of this

purely legal question permits courts expeditiously to weed out suits which fail the test without

requiring a defendant who rightly claims qualified immunity to engage in expensive and time

consuming preparation to defend the suit on its merits.'"  *Id.* (quoting *Siegert v. Gilley*, 500 U.S.

226, 232 (1991).

    To meet this burden, Ms. Harbin "must do more than identify in the abstract a clearly

established right and allege that the defendant has violated it.  Rather, [she] must articulate the

clearly established constitutional right and the defendant's conduct which violated the right with

specificity . . . ."  *Id.* (citations omitted).  Further, she must "'demonstrate a substantial

correspondence between the conduct in question and prior law . . . establishing that the

defendant's actions were clearly prohibited.'"  *Id.* (quoting *Hovater v. Robinson*, 1 F.3d 1063,

1066 (10th Cir. 1993) (internal quotation marks and citation omitted)).  Unless Ms. Harbin can

make the required demonstration, Defendants must prevail.  *Id.* (citations omitted).  "Once the

plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant

bears the burden, as a movant for summary judgment, of showing no material issues of fact

remain that would defeat the claim of qualified immunity."  *Id.* (internal quotation marks and

citations omitted).

   **B.**  **Analysis.**

   In this case, Ms. Harbin alleges that Officer Garcia violated her Fourth Amendment rights

by both arresting her without probable cause and by using excessive force during the alleged

warrantless arrest.  (Doc. 31 at 8-13, 14-16.)  As I explain below, the undisputed facts

demonstrate that the encounter between Plaintiff and Officer Garcia was equivalent to an arrest.

The undisputed facts also establish that Officer Garcia did not have probable cause to make a

warrantless arrest.  Consequently, the force employed during the encounter was excessive.  Based

on the undisputed facts and clearly established law, I find that Officer Garcia is not entitled to

qualified immunity.

   **1.**  **The Encounter Between Officer Garcia and Ms. Harbin Was an Arrest**

      **Rather Than an Investigative Detention.**

   The parties disagree as to whether there was in fact an arrest.  (Docs. 33 at 5, 38 at 10.)

The Tenth Circuit has explained the "three types of police/citizen encounters: consensual

encounters, investigative stops, and arrests."  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.

2000) (citation omitted), quoted in *Cortez v. McCauley*, 438 F.3d 980, 989 (10th Cir. 2006).

"Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need

not be supported by suspicion of criminal wrongdoing." *Cortez*, 438 F.3d at 989 (citing *Oliver*, 209 F.3d at 1186). An investigative detention, or "*Terry*" stop, wherein an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot," "is a seizure within the meaning of the Fourth Amendment . . . ." *Id.* (citing *Oliver*, 209 F.3d at 1186). The third type of encounter is an arrest, for which an officer must have probable cause. *See id.* Probable cause "'exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks and citations omitted in original)). "An arrest is distinguished [from an investigative detention] by the involuntary, 'highly intrusive' nature of the encounter." *Id.* (quoting *Oliver*, 209 F.3d at 1186). "'[T]he use of firearms, handcuffs, and other forceful techniques' generally exceed[s] the scope of an investigative detention and enter[s] the realm of an arrest." *Id.* (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994) (citations omitted)).

"Defendants deny that Ms. Harbin was ever formally arrested on a specific charge" and maintain that the incident was more akin to a *Terry* stop. (Docs. 33 at 5, 34 at 6.) "*Terry* stops are brief, nonintrusive detentions that may involve limited frisks for weapons and preliminary questioning." *United States v. Robinson*, 932 F. Supp. 1271, 1275 (D.N.M. 1996) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "If the officers' actions exceed what is reasonably necessary under the totality of the circumstances to carry out the purposes of such a stop, the detention becomes an arrest." *Id.* (citing *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993)).

"The Government bears the burden of demonstrating that the detention 'was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" *Id.* (quoting *Perdue*, 8 F.3d at 1462).

Officer Garcia testified that at the outset of the encounter, she immediately handcuffed Ms. Harbin and performed a pat-down search before conducting any investigation. (Pl. Ex. J at 21:23-25, 22:1-25.)  "[W]here at the inception of the encounter" Officer Garcia handcuffed and frisked Plaintiff, "it is difficult to categorize the detention as simply a *Terry* stop." *Robinson*, 932 F. Supp. at 1275.  "*Terry* allows officers to conduct a 'reasonable search' for weapons when they have a reason to believe the suspect is armed and dangerous, but 'the extent of the intrusion must be *carefully tailored* to the rationale justifying it.'" *Id.* (quoting *Dunaway v. New York*, 442 U.S. 200, 209 and n.11 (1979).  "Anything more intrusive than a limited frisk or 'pat down' demands a significantly higher level of justification . . . ." *Id.*  "[T]he use of force such as handcuffs and firearms is a far greater level of intrusion, and requires the government to demonstrate that the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994) (quotation marks and citations omitted), quoted in *Robinson*, 932 F. Supp. at 1275.

"Officers are warranted in using handcuffs and firearms during a *Terry* stop under certain circumstances when necessary to ensure their safety or the safety of others because they have reason to believe a particular suspect is armed and dangerous." *Robinson*, 932 F. Supp. at 1275-76 (citations omitted).  Defendants attempt to justify Officer Garcia's actions by claiming that she was acting under exigent circumstances because she was responding to a felony in progress. (Doc. 34 at 4.)  Defendants assert that based on Officer Garcia's "training and experience, [she

8

understood that] felons in the process of committing a crime are a flight risk and a safety hazard."

(*Id.*)  Responding to a situation wherein a person may be attempting to use a fraudulent check or

driver's license, however, does "not provide *per se* justification for officers to use . . . handcuffs

to subdue a suspect during a *Terry* stop."  *See id.* at 1276.

   The Tenth Circuit addressed a similar issue in the context of a drug trafficking stop.  *See*

*Melendez-Garcia*, 28 F.3d at 1052-53.

> In reviewing the legality of a *Terry* stop based on suspicion of trafficking drugs,
> the *Melendez-Garcia* court stated: 'Drugs and guns and violence often go
> together, and thus this might be a factor tending to support an officer's claim of
> reasonableness.  However, there was no evidence or testimony from the police that
> they had reason to believe *these particular suspects* had guns or were violent or
> that the circumstances of *this particular encounter* warranted the unusual
> intrusiveness of handcuffing the defendants during the *Terry* stop.  In the absence
> of such evidence, the naked fact that drugs are suspected will not support a *per se*
> justification for use of guns and handcuffs in a *Terry* stop.'

*Robinson*, 932 F. Supp. at 1276 (quoting *Melendez-Garcia*, 28 F.3d at 1052-53) (emphasis

added).  The Tenth Circuit decided in *Melendez-Garcia* that the officers were not justified in

using firearms or handcuffs during the stop "because the officers outnumbered the suspects,

executed the stop in public view during the day, had no information that the suspects were armed

or violent, and the suspects had fully complied with the officers' orders."  *Id.* (citing

*Melendez-Garcia*, 28 F.3d at 1053).  *But see United States v. Merkley*, 988 F.2d 1062, 1064

(10th Cir.1993) (display of firearms and use of handcuffs reasonable when police had information

that suspect had threatened to kill someone and the officers observed the suspect violently

pounding his fists in his truck).  Similarly, the officers in *Robinson* were not justified in using

firearms or handcuffs during a stop of a suspected bank robber because they outnumbered the

suspect, made the stop in public view during the day, had "no specific evidence that [the suspect]

was armed or violent[,]" and the suspect "did not resist being handcuffed nor did he attempt to flee." *Id.* Moreover, firearms and handcuffs were not justified even though the suspect was verbally abusive toward the officers. *Id.*

Here, Officer Garcia did not testify that she witnessed any verbal or physical aggression as she approached Plaintiff.[4] (*See* Pl. Ex. J at 21:19-25, 22:1-3.) The initial encounter took place in a public place, and Officer Garcia had no information that Plaintiff was armed or violent. (*See id.* at 19:6-25, 20:1-8, 21:8-22.) Furthermore, even though Plaintiff loudly questioned what was happening, she did not resist being handcuffed nor did she attempt to flee. (*See id.* at 21:18-25, 22:1-14.) Instead, Officer Garcia simply argues that based on her training and experience, confronting a person involved in a felony in progress is dangerous. (Doc. 34 at 4.) A generalized suspicion that a person is attempting to use a fraudulent check or driver's license, however, is not enough to justify the immediate intrusive use of handcuffs during a *Terry* stop. *See Robinson*, 932 F. Supp. at 1276 (noting that "[g]eneralized suspicions that a suspect might be armed or dangerous are not enough to warrant the intrusive use of guns and handcuffs during a *Terry* stop").

"[W]hen circumstances reasonably indicate that . . . suspects are armed and dangerous, courts have been willing to rely on the 'officer safety' rationale of *Terry* and authorize the use of handcuffs . . . and other measures of force more traditionally associated with the concepts of 'custody' and 'arrest' than with 'brief investigatory detention.'" *Perdue*, 8 F.3d at 1464. In this case, there was no reasonable indication that Ms. Harbin was armed and dangerous. The

---

[4] The result of my analysis would likely have been different had Officer Garcia offered evidence that Ms. Harbin posed some kind of threat verbal or physical – to the officer or to others in the store. Under those circumstances, there might very well have been probable cause to arrest. *See Robinson*, 932 F. Supp. at 1276.

government has failed to support its assertion that Officer Garcia was justified in immediately

handcuffing and patting down Plaintiff.  "Based on this record, the government has not met its

burden of showing that, under the totality of the circumstances, the intrusiveness of this seizure

was reasonably necessary for officer safety. . . .  Because the specific nature of this stop was not

justified under the *Terry* doctrine, [I] must treat it as an arrest, requiring probable cause."

*Melendez-Garcia*, 28 F.3d at 1053.

> **2.      Officer Garcia Did Not Have Probable Cause to Make the Warrantless**
>
> **Arrest.**

The immediate handcuffing and pat down of Ms. Harbin went beyond the bounds of an

investigative detention, so the encounter must be classified as an arrest.  *See id.*  "Whether that

arrest was constitutionally valid depends . . . upon whether, *at the moment the arrest was made*,

the officers had probable cause to make it . . . ."[5]  *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations

omitted) (emphasis added).  *See also Perdue*, 8 F.3d at 1462 ("An encounter between police and

an individual which goes beyond the limits of a *Terry* stop . . . may be constitutionally justified

only by probable cause or consent.") (citation omitted).  "When a warrantless arrest is the subject

of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer

------------

[5] There is a factual dispute regarding Plaintiff's behavior in the store's security room.  (*See* Pl. Ex. J at 35:14-24; Doc. 33 at 9; Doc. 38 at 7.)  Whether Plaintiff acted "loud and boisterous" after she was handcuffed is not pertinent to this analysis.  (*See* Pl. Ex. J at 35:14-24.)  What is important is whether Officer Garcia had reasonable suspicion to believe Plaintiff was a safety threat when she handcuffed Plaintiff.  Officer Garcia did not testify that she saw Plaintiff acting loud, boisterous, or aggressive as she approached her in the customer service area.  (*See id.* at 21:18-25, 22:1-14.)  I agree that Plaintiff does not appear to be acting in an aggressive or boisterous manner at any time in the customer service area, up to and including the point at which Officer Garcia handcuffed Plaintiff.  (*See* Pl. Ex. O.)  As discussed in the previous section, Officer Garcia did not have a reason to believe Plaintiff was armed or dangerous when she put the handcuffs on Plaintiff; hence, she must have had probable cause for an arrest.  Because the factual dispute regarding Plaintiff's behavior relates to a time *after* her arrest, it is not a genuine issue of material fact for purposes of this analysis.

could have believed that probable cause existed to arrest' the plaintiff[,]" even if that belief is

mistaken. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998) (quoting *Romero*,

45 F.3d at 1476) (internal quotation marks and citations omitted).  "The primary question

therefore is whether, based on the facts and circumstances known to [Officer Garcia], a

reasonable officer could have believed there was probable cause to arrest" Ms. Harbin.  *Id.*

Relying on *Romero*, Defendants assert that Plaintiff should be "required to show that the

statements relied on by [Officer Garcia] did not constitute reasonably trustworthy information

sufficient to lead a prudent police officer to conclude" there was probable cause to apprehend

Plaintiff.  (Doc. 34 at 5 (citing *Romero*, 45 F.3d at 1476).)  But *Romero* is inapposite to this case.

The Tenth Circuit's decisions in *Lusby v. T.G. & Y. Stores*, 749 F.2d 1423 (10th Cir. 1984), *cert.*

*granted and vacated on other grounds sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985),

*aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986)), and *Baptiste v. J.C. Penney Co.*,

147 F.3d 1252 (10th Cir. 1998), are more instructive.  The Tenth Circuit considered in *Lusby*

"whether an officer may rely solely on the statements of a witness, without conducting an

independent investigation, to establish probable cause for a warrantless arrest." *Baptiste*, 147

F.3d at 1258 (citing *Lusby*, 749 F.2d 1423).  In *Lusby*, an employee of a T.G. & Y. Store

mistakenly thought he saw one of the plaintiffs shoplift a pair of sunglasses. *Id.* (citing *Lusby*, 749

F.2d at 1427).  The employee "contacted an off-duty police officer, employed by the store as a

security guard, to investigate." *Id.* (citing *Lusby*, 749 F.2d at 1427-28).  The off-duty police

officer did not question the cashier in whose checkout line plaintiff had paid for the sunglasses;

rather, he placed the plaintiff under arrest after "the plaintiff was unable to produce a receipt . . .

." *Id.* (citing *Lusby*, 749 F.2d at 1428, 1432).  "Two Lawton police officers subsequently arrived

12

at the store and took the plaintiff into custody without investigating the alleged shoplifting.  The officers did not interview any witnesses, nor did they inquire into whether there was probable cause to arrest."  *Id.* (citing *Lusby*, 749 F.2d at 1428, 1430, 1432).  The Tenth Circuit held that the off-duty police officer "was not entitled to qualified immunity because he failed to check with the cashier to see if the plaintiff had paid for the sunglasses."  *Id.* (citing *Lusby*, 749 F.2d at 1432).[6]

In *Baptiste*, the Tenth Circuit held that the defendant police officers were not entitled to qualified immunity where they relied on allegations of store security guards for probable cause to arrest the plaintiff, even though the officers had viewed a security video which was insufficient in itself to establish probable cause.  *Id.* at 1259.  As the Tenth Circuit noted in *Baptiste*, "the context of *Lusby* differs from the case currently before the court, [but] its message is unequivocal: police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation."  *Id.* at 1259 (citing *Lusby*, 749 F.2d at 1432).  Here, Officer Garcia conducted no investigation before placing Ms. Harbin under arrest.  (*See* Pl. Ex. J at 22:15-25.)  She argues, however, that Plaintiff "has failed to show that the information known to Defendant Garcia did not establish probable cause to apprehend the Plaintiff."  (Doc. 33 at 8.)  This is essentially the same argument advanced by the defendants in *Baptiste*: that an officer "should be allowed to rely on the statement of [a security guard] for probable cause to arrest."  *Baptiste*, 147 F.3d at 1259.  The Tenth Circuit

---

[6] "The court further noted that the two officers who took the plaintiff into custody, based solely on the allegations of the guard, were acting in accord with the city's unlawful policy" of routinely failing to "investigate merchants' allegations of shoplifting before arresting suspects . . . ."  *Baptiste*, 147 F.3d at 1258-59 (citing *Lusby*, 749 F.2d at 1432).

has already rejected that argument.  *Id.*  Officer Garcia "knew that the allegations of the guard[]

were based on" physical evidence in the custody of Wal-Mart and readily available for inspection.

*Id.*  (*See also* Pl. Ex. J at 19:8-12, 23-25, 20:1-8, 26:9-13.)  "[T]o credit [Officer Garcia's]

argument would allow a wholesale delegation of police officers' duty to investigate and make an

independent probable cause determination.  Equally important in the context of qualified

immunity, the argument conflicts with *Lusby*" and *Baptiste*, "established Tenth Circuit law."  *Id.*

"The law was and is unambiguous: . . . 'the probable cause standard of the Fourth Amendment

requires officers to reasonably interview witnesses readily available at the scene, investigate basic

evidence, or otherwise inquire if a crime has been committed at all before invoking the power of

warrantless arrest and detention.'"  *Cortez*, 438 F.3d at 990 (quoting *Romero*, 45 F.3d at 1476-77

(footnote omitted)).  Officer Garcia failed to adhere to established law.

  Plaintiff has carried her burden of showing that there is clearly established law

demonstrating that Officer Garcia's actions violated Plaintiff's constitutional rights.  *Baptiste*, 147

F.3d at 1258, n.9.  "Ordinarily, in order for the law to be clearly established, there must be a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City and

County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted).  At the time of Ms.

Harbin's arrest, *Lusby* and *Baptiste* were clearly established law.  "Based on the totality of the

circumstances, a reasonable officer . . . would not have believed there was probable cause to

arrest" Ms. Harbin.  *Baptiste*, 147 F.3d at 1259. Consequently, Officer Garcia is not entitled to

qualified immunity.

  **3.**  **Ms. Harbin Is Entitled to Summary Judgment on Her Unlawful Seizure**

Claim.

It is proper for the Court to find that Officer Garcia did not have probable cause to arrest Plaintiff if that conclusion is based on the undisputed facts. *See Cortez*, 438 F.3d at 991 (citations omitted). Viewed in a light most favorable to Defendants, the undisputed facts reveal that Officer Garcia had no reasonable indication that Ms. Harbin was armed or dangerous; hence, the immediate handcuffing and pat-down could only have been justified by probable cause. (*See* Def. Ex. 1 at 1-2; Pl. Ex. J at 19:8-12.) The undisputed facts also establish that Officer Garcia conducted no independent investigation before handcuffing Ms. Harbin, instead relying only on the allegations of Wal-Mart's security officer. (*See* Def. Ex. 1 at 1-2; Def. Ex. 2 at 33:12-24.) Clearly established Tenth Circuit Law "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention.'" *Cortez*, 438 F.3d at 990 (quoting *Romero*, 45 F.3d at 1476-77). After considering all of the evidence and construing all inferences in favor of Defendants, I find that Officer Garcia could not have reasonably believed that probable cause existed to arrest Ms. Harbin without conducting an independent investigation. Having found that Officer Garcia lacked probable cause to arrest Ms. Harbin, I find that Officer Garcia violated Plaintiff's rights under the Fourth Amendment to the United States Constitution when she arrested Plaintiff. Accordingly, I will grant Plaintiff's Motion for Summary Judgment against Officer Garcia as to the unlawful seizure.

**4.     Ms. Harbin's Claim that Officer Garcia Used Excessive Force Does Not Survive Summary Judgment.**

The Tenth Circuit recently held that "[a]ny force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful." *Cortez*, 438 F.3d at 996. "[W]hen an excessive force claim rests solely on an allegation that the force was excessive because the underlying seizure itself was unlawful the excessive force claim is derivative: it necessarily exists as a result of the unlawful seizure, and does not constitute a separate claim for relief." *Id.* Consequently, because I find that Ms. Harbin "was subjected to an unlawful arrest[,] . . . [Ms. Harbin's] claim that [Officer Garcia] used excessive force . . . [does] not survive Defendants' summary judgment motion because Plaintiff[ may] not independently recover on that excessive force claim." *Id.* Defendants' motion is granted and Plaintiff's motion is denied on the excessive force claim. "[T]he level of force used in effecting the unlawful seizure [may, however,] play[] a role in the calculation of damages for that seizure." *Id.*

## III.   PLAINTIFF'S STATE COMMON LAW CLAIMS.

Plaintiff alleges that Officer Garcia committed false imprisonment, false arrest, assault, and battery under the New Mexico Tort Claims Act, N.M. STAT. § 41-4-1 to -27 (1978), and that Officer Garcia's immunity was waived under that Act. (Doc. 1, Ex. A at 1, 7-8.) I will exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a) (2004). "Because [qualified] immunity principles do not resolve this issue, [I] apply the 'traditional' standard of review for summary judgment, in which the moving party bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Scull v. New Mexico*, 236 F.3d 588, 598-99 (10th Cir. 2000) (citing *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir.2000)). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

16

nonmoving party.'" *Id.* at 599 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the movant carries this initial burden, the burden shifts to the nonmovant 'to go beyond the pleadings and set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Id.* (quoting *Mitchell*, 218 F.3d at 1197).

I will grant Plaintiff's motion as to liability only and deny Defendants' motion with respect to Plaintiff's claims for false arrest and false imprisonment. I will grant Defendants' motion and deny Plaintiff's motion as to the assault claim. Finally, I will deny both motions with respect to the battery claim. As Plaintiff acknowledges, the state and federal claims rest on "identical" facts. (Doc. 38 at 20.) Consequently, because any "tort damages will constitute a portion of the damages for deprivation of a constitutional right, general principles against double recovery will prevail."[7] *Wells v. Valencia County*, 644 P.2d 517, 521 (1982).

### A.    False imprisonment and Arrest.

"Under New Mexico law, '[f]alse imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'" *Romero v. Sanchez*, 895 P.2d 212, 215 (N.M. 1995) (quoting N.M. Stat. Ann. § 30-4-3 (1978)), quoted in *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). "False arrest or unlawful detention occurs when the 'facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate.'"

---

[7] Defendants allege that Plaintiff cannot prove injury in fact or proximate cause for her state law claims, and that Plaintiff did not provide foundation for her medical records. (*See* Doc. 33 at 10.) Because I am only granting Plaintiff's motion with respect to false arrest and imprisonment as to liability only, the extent of Plaintiff's injuries will be an issue for the jury in awarding damages. While Plaintiff may not be able to prove extensive physical or emotional injuries, the issue does not need to be addressed here, and I will not consider Plaintiff's medical records for purposes of this opinion. *See* N.M. Stat. § 13-1832 1978 (uniform jury instruction for nominal damages).

*Fuerschbach*, 439 F.3d at 1207 (quoting *Sanchez*, 895 P.2d at 215 ("'Unlawful detention has similar requirements to false imprisonment'")).  "A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest." *Id.* (citing *State v. Johnson*, 930 P.2d 1148, 1154 (N.M. 1996); *Perea v. Stout*, 613 P.2d 1034, 1039 (N.M. 1980)).  "[A] good faith belief in the lawfulness of the action ordinarily requires probable cause to arrest."  *Id.* (citing *Johnson*, 930 P.2d at 1154 ("'a common-law defense to a civil wrongful arrest or a false imprisonment suit also requires only that the officer prove that he or she acted in good faith and with probable cause *and therefore lawfully under the circumstances*'") (citing with approval *Carroll v. United States*, 267 U.S. 132, 156 (1925) (cited for proposition that "'in cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause'")))  As explained above, Officer Garcia lacked probable cause for the warrantless arrest of Ms. Harbin, and a reasonable officer would not have believed there was probable cause to arrest.  *See Baptiste*, 147 F.3d at 1259.  Defendants' motion will be denied with respect to the claims of false imprisonment and false arrest.

Further, Plaintiff has met her burden of showing that there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law.  *Scull*, 236 F.3d at 598-99 (citing *Mitchell*, 218 F.3d at 1197).  Defendants have not identified any evidence from which a reasonable jury could find in Defendants' favor.  *Id.* (citation omitted).  After considering all of the evidence and construing all inferences in favor of Defendants, I find that Officer Garcia could not have reasonably believed that probable cause existed to arrest Ms. Harbin, thereby violating Plaintiff's state common law rights by arresting and imprisoning her without probable cause.

Accordingly, I will grant Plaintiff's Motion for Summary Judgment against Officer Garcia as to her claims for false arrest and imprisonment.

### B.    Assault and Battery.

To prevail on her assault claim, Ms. Harbin must show "an 'act, threat or menacing conduct'" by Officer Garcia "'which cause[d Ms. Harbin] to reasonably believe that [she was] in danger of receiving an immediate battery.'" *Fuerschbach*, 439 F.3d at 1208 (quoting N.M. STAT. ANN. § 30-3-1(B) (1978)).  Plaintiff has failed to allege facts sufficient to support her assault claim.  Nowhere does Plaintiff state that she believe[d she was] in danger of receiving an immediate battery."[8]  *Id.* at 1208.   Because "cross motions for summary judgments . . . authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties[,]" Plaintiff's motion is denied and Defendants' motion is granted as to the assault claim.  *Harrison W. Corp. v. Gulf Oil Co.*, 662 F. 2d 690, 692 (10th Cir. 1981) (citations omitted).  It appears instead that Ms. Harbin is only claiming that Officer Garcia battered her.  The parties did not fully brief this claim and I am unwilling to grant summary judgment for either party.  Accordingly, I will deny both motions with respect to the battery claim.

### IV.    CONCLUSION.

The undisputed facts presented by the parties establish that the immediate handcuffing and

---

[8] In fact, her Memorandum establishes that "Defendant Garcia approached Ms. Harbin from behind, grabbed Ms. Harbin's wrists and put them behind her back, and handcuffed her."  (Doc. 31 at 3.)  That assertion is more consistent with a finding that Officer Garcia had already made contact with Plaintiff, which is a battery in this case, before Plaintiff was even aware of Officer Garcia's presence.

pat-down of Ms. Harbin by Officer Garcia amounted to an arrest within the meaning of the Fourth Amendment.  Because Officer Garcia relied on the allegations of a store security guard instead of conducting an independent investigation before arresting Plaintiff, Officer Garcia violated Plaintiff's Fourth Amendment rights by both arresting her without probable cause and by using excessive force during the warrantless arrest.  Officer Garcia's conduct violated clearly established law, and she is not entitled to qualified immunity.  After considering all of the evidence and construing all inferences in favor of Defendants, I find that Officer Garcia could not have reasonably believed that probable cause existed to arrest Ms. Harbin without conducting an independent investigation.  Accordingly, I will grant Plaintiff's Motion for Summary Judgment on her Fourth Amendment claim for unlawful seizure.  Defendants' motion is granted and Plaintiff's motion is denied on the excessive force claim, however, because the claim is derivative to the unlawful seizure and does not constitute a separate claim for relief.

With respect to Plaintiff's state law claims, after considering all of the evidence and construing all inferences in favor of Defendants, I find that Officer Garcia violated Plaintiff's state law rights by falsely arresting and imprisoning her.  Defendants' motion is denied and Plaintiff's motion is granted as to these two claims.  Officer Garcia has waived immunity under the Tort Claims Act for these two claims.  *See* N.M. STAT. § 41-4-12 (1978).  The parties did not fully brief the issue of whether Officer Garcia battered Plaintiff, so I will deny both motions with respect to that claim.  Finally, Plaintiff has not alleged sufficient facts to support her assault claim.  Because cross motions for summary judgment allow me to assume that there is no evidence which needs to be considered other than that which has been filed by the parties, I will grant Defendants' motion and deny Plaintiff's motion with respect to the assault claim.  I will also deny Plaintiff's

motion inasmuch as it sought summary judgment for any claims against the City of Albuquerque.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 30)

is **GRANTED with respect to her Fourth Amendment claim for unlawful seizure and her state law claims for false imprisonment, and false arrest**.  Plaintiff's motion is **DENIED with respect to her Fourth Amendment claim for excessive force, her state law claims for assault and battery, and any claim against the City of Albuquerque**.

**IT IS FURTHER ORDERED** that Defendants' Cross Motion for Summary Judgment (Doc. 34) is **GRANTED with respect to Plaintiff's Fourth Amendment claim for excessive force and state law claim for assault**.  The remainder of Defendants' Cross Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**